276 So.2d 58 (1973)
Anthony ESPERTI, Appellant,
v.
STATE of Florida, Appellee.
No. 71-930.
District Court of Appeal of Florida, Second District.
March 21, 1973.
Rehearing Denied May 3, 1973.
*61 Richard M. Gale, Miami, for appellant.
Robert L. Shevin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., Tallahassee, for appellee.
LILES, Judge.
Esperti was indicted for first degree murder in January, 1968. His first trial resulted in a mistrial on March 4, 1969. The trial from which this appeal is taken was begun on October 11, 1971, in Polk County, following a change of venue from Dade County where the crime occurred.
Esperti primarily urges that he was denied his right to a speedy trial under the Sixth Amendment of the United States Constitution, Florida Statute § 915.01 (now repealed) and Florida Rules of Criminal Procedure 3.191, 33 F.S.A. (formerly CrPR 1.191), otherwise referred to as the "speedy trial rule."
A reading of the record reveals that appellant has not languished in prison for three and one half years without benefit of judicial process. There has been continuous litigation in either the trial court, district court or the supreme court throughout this time. However, this fact does not bar a more precise application of the law in his favor if it appears his rights have been denied.
First, we must examine his right under the Sixth Amendment as construed in Dickey v. Florida, 398 U.S. 30, 90 S.Ct. 1564, 26 L.Ed.2d 26 (1964). During the course of this pending litigation one of the witnesses died and appellant now maintains that he was a material witness. A reading of the record would indicate that he was not a material witness. In Dickey the defendant languished in jail without benefit of judicial process for some eight years. We do not here suggest that eight years must elapse for constitutional speedy trial rights to accrue. The decision in Dickey is distinguishable on its facts and particularly when viewed under the present CrPR 3.191. The Sixth Amendment to the United States Constitution does not fix a number of days certain within which a defendant must be tried but simply provides that the accused "shall enjoy the right to a speedy and public trial... ." What is and is not a speedy trial has been set forth in many cases and turns generally upon what happened between the time the defendant was indicted and the time he was tried. Further, Dickey concludes that no valid reason existed for his delay in construing the right of speedy trial under the Sixth Amendment. Here, valid reasons have been advanced for certain delays of his trial. Therefore, we conclude that appellant's Sixth Amendment right to a speedy trial was not violated.
Next we look to F.S. § 915.01 and the cases decided under it. It is not contested that the appellant filed the necessary demands for speedy trial in three successive terms of court. The appellant filed demands during the spring and fall terms of 1969 and the spring term of 1970. It *62 has been held under F.S. § 915.01 that actions by either party which cause automatic stays of trial court proceedings will also toll the running of the speedy trial statute. Carroll v. State, 251 So.2d 866, 871 (Fla. 1971); Meeks v. State, 250 So.2d 854, 856 (Fla. 1971); Bryant v. Blount, 261 So.2d 847 (1st D.C.A.Fla. 1972). In the instant case, prior to the first demand for speedy trial, the State had appealed the granting of a motion to suppress by the appellant. The appeal was taken in January of 1969 and disposed of in March of 1969, three days after the beginning of the spring term of court. Florida Statute § 924.071, F.S.A., authorizes the State to appeal motions to suppress which are granted to defendants. It also provides for an automatic stay of trial court proceedings during the pendency of the appeal. Thus, the trial court was without jurisdiction to try the case during portions of the spring term of 1969 and the fall term of 1968. For this reason these two terms of court may not be counted in determining whether the appellant was denied a speedy trial under the statute.
This in itself would be sufficient reason to conclude that appellant was not denied his statutory speedy trial rights. Nevertheless, there is still another reason sufficient to draw this conclusion. As stated previously, the appellant was tried some two months after indictment and this proceeding resulted in a mistrial. It was held in Ruester v. Turner, 250 So.2d 264 (Fla. 1971), that a mistrial is a trial sufficient to satisfy F.S. § 915.01. See, also, State ex rel. Gayle v. Dowling, 91 Fla. 236, 107 So. 267 (Fla. 1926). The Florida Supreme Court further held that once such a trial has occurred the statute becomes inapplicable in the case and further speedy trial problems must be decided by federal constitutional principles. Further, the court held that the trial court may exercise its discretion in deciding later speedy trial problems. We have already stated that we do not believe the appellant was denied his constitutional right to a speedy trial. The trial judge in this case exercised his discretion and was justified in delaying action on the case inasmuch as there were several petitions and appeals pending during much of the time and it appeared that the appellant was not prejudiced by the delay in the defense of his case.
Florida's speedy trial rule, then CrPR 1.191, took effect on March 1, 1971. We have concluded that the appellant had accrued neither constitutional nor statutory speedy trial rights by the effective date of the rule. Thus, there were no rights which might have been preserved by the rule. See, CrPR 3.191(i)(3). The rule provided that prisoners in custody prior to its effective date were to be tried before September 27, 1971, or be discharged. It should be noted that the rule contemplates the effect of mistrials in Section 3.191(g). Nevertheless it is clear that the mistrial in this particular case is not affected by nor does it affect the rule, having occurred some three years previously.
It must be presumed that there existed a need for the rule in order to insure against prisoners languishing in jail without benefit of a fair trial. The rule provides that certain circumstances may justify extensions of the time periods set out therein. Although prisoners in custody before the rule should have been tried before September 27, 1971, such prisoners were nevertheless subject to these extensions as well as those judicially imposed on the rule.
Certain circumstances, nevertheless, in this case occurring prior to the effective date of the rule should be examined to determine whether the appellant has been denied a speedy trial. Prior to the rule's existence the appellant moved to compel disclosure by the State. The motion was granted and the State subsequently moved to continue the cause while it brought a petition for certiorari contesting the order granting disclosure. While this petition was pending the appellant moved to dismiss the case, claiming a denial of speedy trial rights under the statute. This motion *63 was denied and the appellant petitioned for prohibition in this court. Subsequently, the State's petition was disposed of. Nevertheless, the appellant brought a petition for certiorari to the Florida Supreme Court contesting the denial of prohibition by this court. This petition was brought some 30 days after the order of this court. Certiorari was granted by the Florida Supreme Court on February 8, 1971. The writ was finally discharged on July 12, 1971, some four months after the effective date of the rule.
Initially, the question is whether appellant's action in bringing the petitions for prohibition and certiorari should be construed against him as a tolling of the running of the rule. As set out before, conduct by parties in a criminal case which results in superseding or staying trial court proceedings has been held to toll the running of speedy trial rights. See, Carroll, Meeks and Bryant, supra. Examples are: (1) Appeals by the State under F.S. § 924.071, F.S.A. (See, Carroll v. State, supra); (2) Petitions for certiorari to the Supreme Court from the district court within 15 days of the district court's decision or order (See, Meeks and F.A.R. 4.5(c) (6)) 32 F.S.A.; (3) Issuance of rule nisi on petition for writ of prohibition. There are numerous other mandatory and discretionary examples. The cases cited above were decided under F.S. § 915.01 but we believe are equally applicable to the running of the rule inasmuch as trial simply cannot proceed where stayed or superseded.
The appellant's petition for prohibition on the denial of his motion to dismiss was denied by this court. Rule nisi was denied and no automatic stay ensued. The appellant's petition for certiorari contesting this court's denial of prohibition, having been brought later than 15 days after the denial by this court, also did not result in a stay of proceedings below. Inasmuch as the trial court proceedings were not superseded by the appellant's actions there is no reason initially to charge him with delay of his own trial in bringing the petitions. Furthermore, no discretionary stay was requested nor granted by any court.
There is also the question of whether certiorari proceedings may, for purposes of the rule, be treated as interlocutory appeals or as "exceptional circumstances." Criminal Procedure Rule 3.191(d)(2) provides that the periods under the rule may be extended by order of the court:
"(ii) On the court's own motion or motion by either party in exceptional circumstances as hereinafter defined . . or (iv) a period of reasonable and necessary delay resulting from proceedings including but not limited to ... hearings on pretrial motions, for interlocutory appeals ... for purposes of this Rule, any other delay shall be unexcused." (Emphasis added.)
Initially, an analogy between certiorari proceedings and interlocutory appeals is somewhat difficult to draw since the extraordinary writs are normally useful only when an interlocutory appeal is not available. Since these writs are in common use it must be assumed that the Supreme Court's failure to include them specifically in Section 3.191(d)(2) was not unintentional. However, with reference to the speedy trial rule there is a great deal of similarity in their effect on trial court proceedings.
In Bryant v. Blount, 261 So.2d 847 (1st D.C.A.Fla. 1972), a case decided under the speedy trial statute and partially under the rule, the First District Court of Appeal distinguished between interlocutory appeals by the State which actually stay trial court proceedings and those which do not. Florida Statute § 924.071, F.S.A., provides for an automatic stay of proceedings when the State appeals adverse orders on motions to suppress evidence and confessions, and evidence illegally seized. Other adverse orders on pretrial motions may be appealed under F.S. § 924.07, F.S.A., and no stay results. The automatic *64 stay provided, then, was clearly reasonable in that disposition of appeals of the former type are much more likely to have a direct effect on the trial proceedings themselves. Now, under the rule, all interlocutory appeals may be grounds for extending time periods. Thus, while we do not rely solely on this reasoning in distinguishing between certiorari proceedings and interlocutory appeals we believe it is apropos. Interlocutory appeals are specifically mentioned as grounds for time extensions because issues which are interlocutorily appealable are likely to have a direct bearing on proceedings below. Certiorari proceedings are often only tangentially related to the trial proceedings themselves.
For instance, in this case, the trial proceedings not having been stayed, the trial was not influenced in any way by the outcome of the certiorari dealing with whether the appellant was denied a speedy trial. Of course, the validity of the trial itself may be in question. If the trial judge has correctly ruled on the accused's motion to be dismissed for lack of a speedy trial he shouldn't fear further certiorari proceedings by the accused on that point of law. If the judge is unsure of his decision this uncertainty should not be visited on the accused by an extension of time for trial while the judge awaits the appellate court's disposition. Certainly an accused may pursue his legal right to be discharged for lack of a speedy trial without forfeiting his speedy trial rights. Such an outcome would be ludicrous.
In view of the diverse types of questions which may be raised through extraordinary writs we do not here hold that no certiorari proceedings may be treated as interlocutory appeals for purposes of speedy trial rules. Some questions so brought may have a direct bearing on the trial itself and would justify a time extension.
No order actually extending the time period under the rule was granted by the trial court. The rule provides that the periods of time may be extended by order of the court where certain circumstances exist. As we interpret the rule the extensions are to be actually granted or denied by the court and should not be presumed. It is the order and not the circumstances which should toll the rule. We have previously stated that a writing is anticipated under CrPR 3.191(d)(2)(i). Eastwood v. Hall, 258 So.2d 269, 270 (2d D.C.A.Fla. 1972). In Eastwood, we held that court recording of an extension during trial proceedings was a sufficient writing. In any case, some notice of whether the rule will or will not run as a result of proposed conduct by the parties should be given by the trial court at each stage of the proceedings. This should occur before the extension and not after. This will also put appellate courts on notice as to whether the rule is running so that they may act accordingly.
Notwithstanding the foregoing, it is apparent that all parties are on constructive notice that trial may not be had while the trial court is stayed from further proceedings in the case. As set out above, such a situation concomitantly tolls the running of CrPR 3.191. Having previously stated that the appellant's actions in petitioning for prohibition and certiorari which did not result in stays should not be construed against him, we, nevertheless, must draw a distinction between the bringing of the petition and the actual issuance of the writ of certiorari by the Florida Supreme Court on February 8, 1971. At common law, a writ of certiorari had the effect of supersedeas. See, Great American Ins. Co. of New York v. Peters, 105 Fla. 380, 141 So. 322 (1932); State ex rel. Tullidge v. Driskell, 117 Fla. 717, 158 So. 277 (1934); State Beverage Dept. v. Willis, 159 Fla. 698, 32 So.2d 580 (1947). Supersedeas concurrent with the issuance of writ of certiorari is logical since "[i]t takes the record out of the custody of the inferior tribunal and leaves nothing there *65 to be prosecuted or enforced by execution." Driskell, supra, 158 So. 279.
The writ was granted by the Florida Supreme Court on February 8, 1971 and was not finally discharged until July 12, 1971, some four months after the effective date of the speedy trial rule. Because the writ acted as a supersedeas until it was discharged, it tolled the running of the speedy trial rule. Thus, trial on October 11, 1971 was timely.
However, we are constrained to notice that although the trial court had the power to try this case on October 11, 1971, that court may have lost its power to proceed with trial on the following day. The defendant had again sought a writ of prohibition in this court in November of 1970, soon after the third term of court had expired under the speedy trial statute, without the defendant having been brought to trial. The decision to deny prohibition was made on October 8, 1971, three days prior to trial. On October 12, 1971 the defendant sought certiorari in the Florida Supreme Court. Appellate Rule 4.5(c)(6), as stated before, provides for an automatic stay of trial court proceedings when certiorari is brought within 15 days of the lower court's decision.
It therefore appears under the rule that a stay of trial could have been accomplished. However, the trial was in progress and a stay order was never entered. Since an actual stay was never perfected and since the trial proceeded without prejudice to the defendant, this does not constitute such a stay as would divest the court of jurisdiction.
The stay provided for in F.A.R. 4.5(c)(6), supra, is a procedural rather than a substantive one which would be sufficient to divest jurisdiction. This is expecially true when there is no question but that the court had jurisdiction over the subject matter and of the person.
Additionally, the supreme court did not issue the rule and thereafter denied certiorari. Therefore, the trial progressed while the supreme court had this court's denial of prohibition under review. There was no prejudicial effect on the outcome of appellant's trial.
For the foregoing reasons the judgment is affirmed.
MANN, C.J., and McNULTY, J., concur.